NICASIO CARDONA, SR., ADMINISTRATOR (ESTATE OF NICASIO CARDONA, JR.), ET AL. *v.* MODESTO VALENTIN

NICASIO CARDONA, SR., ADMINISTRATOR (ESTATE OF NICASIO CARDONA, JR.), ET AL. *v.* PEDRO MORALES

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued June 3—decided July 21, 1970

*John F. Papandrea,* for the appellants (plaintiffs) in each case.

*Gerald P. Dwyer,* with whom, on the brief, were *Martin E. Gormley, Kevin T. Gormley* and *Irving H. Perlmutter,* for the appellee (defendant) in each case.

SHAPIRO, J. These two related actions arose out of the fatal stabbing of Nicasio Cardona, Jr., by Pedro Morales in a poolroom in Meriden, on January 24, 1964. At the time of the stabbing, Morales was employed as the manager of the poolroom by Modesto Valentin, who owned it. Nicasio Cardona, Sr., hereinafter referred to as the plaintiff, in an individual capacity and in his representative capacity as administrator of the estate of Cardona, Jr., brought an action, hereinafter referred to as the Valentin case, for money damages against Valentin, and an action, hereinafter referred to as the Morales case, for money damages against Morales. In the Valentin case, the court rendered judgment in favor of the defendant Valentin. In the Morales case, the defendant Morales failed to appear and a default judgment was rendered in favor of the plaintiff. From these judgments the plaintiff has appealed.

No attack has been made upon the court's finding of the following facts. Valentin owned a building in Meriden, on the first floor of which was a public poolroom with facilities for card playing, and on the second floor of which were the living quarters of Valentin and his wife. Valentin hired Morales to manage the poolroom. One of Morales' duties was the collection of the price of a pool game, which was ten cents. Another of his duties was to keep peace among the patrons of the poolroom. On Friday evening, January 24, 1964, Morales as usual was working in the poolroom without assistance.

Cardona, Jr., arrived at the poolroom at about 8 o'clock and proceeded to play some games of pool. When Morales attempted to collect the ten-cent fee for an uncompleted game from Cardona, Jr., he refused to pay. An argument between them ensued, leading to an exchange of blows. Bystanders began to yell, and there was general bedlam. Valentin and his wife, who were upstairs, heard the commotion and came downstairs to the poolroom to investigate. They saw Morales and Cardona, Jr., fighting and, after endeavoring to separate them, succeeded in doing so with the assistance of bystanders. Valentin requested that Cardona, Jr., leave. Cardona, Jr., agreed to leave and started toward the door accompanied by Valentin and his wife. At this point the fight between Morales and Cardona, Jr., was over and the poolroom was quiet. As Cardona, Jr., and Valentin and his wife approached the door, it opened, and Angel Cardona, a brother of Cardona, Jr., together with some of his friends, walked into the poolroom. Valentin told Angel what had happened, and Angel announced that anyone who fought with his brother fought with him, adding, "If we have to kill Pellin [Morales], we'll kill him." Fighting then broke out anew. Angel and his friends started to throw various objects, and some of the patrons of the poolroom joined in the fight. Recognizing that the situation was out of control, Valentin went upstairs to his living quarters, where he telephoned the police for aid. While Valentin was upstairs telephoning the police, Morales fatally stabbed Cardona, Jr., with a knife he had on his person.

In both cases the plaintiff assigns as error certain of the conclusions reached by the court. These conclusions are to be tested by the findings.

*Brockett* v. *Jensen,* 154 Conn. 328, 331, 225 A.2d 190; *Craig* v. *Dunleavy,* 154 Conn. 100, 105, 221 A.2d 855; *Klahr* v. *Kostopoulos,* 138 Conn. 653, 655, 88 A.2d 332. They must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case. *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 79, 239 A.2d 500; *Craig* v. *Dunleavy,* supra.

In the Valentin case the plaintiff claims that he is entitled to damages from Valentin for the wrongful death of Cardona, Jr., on the theory that Valentin, as Morales' employer, is liable for his employee's wilful torts, such as the fatal stabbing of Cardona, Jr., committed within the scope of his employment and in furtherance of his employer's business. It is well established that an employer is liable for the wilful torts of his employee when they are committed within the scope of his employment and in furtherance of the employer's business. *Pelletier* v. *Bilbiles,* 154 Conn. 544, 547, 227 A.2d 251; *Rappaport* v. *Rosen Film Delivery System, Inc.,* 127 Conn. 524, 526, 18 A.2d 362; *Antinozzi* v. *A. Vincent Pepe Co.,* 117 Conn. 11, 13, 166 A. 392. Ordinarily, it is a question of fact whether the wilful tort of an employee has occurred within the scope of his employment and in furtherance of his employer's business. *Rappaport* v. *Rosen Film Delivery System, Inc.,* supra.

The plaintiff assigns as error the court's conclusion that Morales' fatal stabbing of Cardona, Jr., did not occur within the scope of Morales' employment as manager of the poolroom or in furtherance of Valentin's business. The court found that on the evening of January 24, 1964, two separate and distinct fights took place in the poolroom; that the

first fight began when Morales attempted to collect the ten-cent fee for a pool game from Cardona, Jr., and he refused to pay; that the first fight ended when Valentin and his wife separated Morales and Cardona, Jr., who were exchanging blows, and Cardona, Jr., agreed to leave the poolroom; that the second fight began when Angel Cardona, together with some of his friends, entered the poolroom, spoke in a belligerent manner and began to throw various objects; and that Morales fatally stabbed Cardona, Jr., during the course of this second fight. From these facts the court reasonably concluded that the collection of the ten-cent fee for the pool game which set off the first fight was not an issue in, and was totally disconnected from, the second fight and that the second fight was set off by the arrival of Angel Cardona and his cohorts. The court's ultimate conclusion that Morales, when he stabbed Cardona, Jr., was not acting within the scope of his employment as manager of the poolroom or in furtherance of Valentin's business is legally and logically consistent with these conclusions and does not involve the application of an erroneous rule of law material to the case.

In the Valentin case the plaintiff also claims that he is entitled to damages from Valentin for the wrongful death of Cardona, Jr., on the theory that Valentin was negligent in not hiring more employees to assist in the management of the poolroom and in not having a telephone or other adequate alarm system in the poolroom which could be used to summon aid in the event of trouble. In this regard the court found that Friday and Saturday evenings were the busiest evenings in the poolroom; that January 24, 1964, was a Friday; that Valentin had no employees apart from Morales to assist in the

management of the poolroom; that Morales was working without assistance in the poolroom on the evening in question; and that there was no telephone in the poolroom itself.

The court made no finding regarding the validity of the plaintiff's claim that Valentin was negligent in failing to staff the poolroom adequately and in failing to provide it with an adequate alarm system. Rather the court concluded that even if it is assumed that Valentin was negligent in this regard, such negligence was not the proximate cause of the death of Cardona, Jr. The complaint alleged that Valentin should reasonably have anticipated such a dispute and stabbing as took place, yet failed to take steps to prevent their occurrence, and that such negligence was a proximate cause of the injuries suffered. This was denied by Valentin.

As we recently stated, "[i]t is elementary that, in a negligence case, a causal relation between a defendant's wrongful conduct and a plaintiff's injury must be established in order for the plaintiff to recover damages." *Miranti* v. *Brookside Shopping Center, Inc.,* 159 Conn. 24, 27, 266 A.2d 370; see *Lombardi* v. *J. A. Bergren Dairy Farms, Inc.,* 153 Conn. 19, 22, 213 A.2d 449; *Mahoney* v. *Beatman,* 110 Conn. 184, 188, 147 A. 762. Ordinarily, it is a question of fact whether the negligence of a defendant was the proximate cause of a plaintiff's injuries. *Miranti* v. *Brookside Shopping Center, Inc.,* supra; *McDowell* v. *Federal Tea Co.,* 128 Conn. 437, 440, 23 A.2d 512. "In a situation in which the negligent conduct of a defendant is an ingredient, but not the initiating force, in a sequence of events culminating in an injury to a plaintiff, the Restatement on Torts states the rule in this way: 'Where the negligent conduct of the actor creates or in-

creases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.' Restatement (Second), 2 Torts § 442B." *Miranti* v. *Brookside Shopping Center, Inc.,* supra, 28.

The plaintiff assigns as error the court's conclusion that even if it is assumed that Valentin was negligent in failing to staff the poolroom adequately and in failing to provide it with an adequate alarm system, such negligence was not the proximate cause of the death of Cardona, Jr. It has been pointed out that the court found that on the evening of January 24, 1964, two separate and distinct fights took place in the poolroom; that the first fight began when Morales attempted to collect the ten-cent fee for a pool game from Cardona, Jr., and he refused to pay; that the second fight began when Angel Cardona, together with some of his friends, entered the poolroom, spoke in a belligerent manner and began to throw pool balls and soda bottles and to break cue sticks; and that Morales fatally stabbed Cardona, Jr., during the course of this second fight. From these facts the court could reasonably conclude that the actions of Angel Cardona and his friends were the proximate cause of the death rather than any alleged negligence on the part of the defendant Valentin.

In the Morales case the plaintiff claims that he is entitled to a judgment against Morales for more than nominal damages. It is undisputed that Morales failed to appear, and for that reason a default was proper. "A default in an action for

legal relief admits the material facts declared on as constituting a cause of action, and that, if these do constitute a cause of action, the plaintiff has a right to recover at least nominal damages. A default in an action for legal and equitable relief, followed by a waiver of all claims for damages, simply establishes the plaintiff's right to go forward and prove the matters he has alleged, unembarrassed by any written pleadings on the part of the defendant, and with no other delays or formalities than such as may be deemed necessary to ensure that equity shall be done. It does not under our practice . . . entitle him to treat the matter of his complaint as confessed." *Starr Cash & Package Car Co.* v. *Starr,* 69 Conn. 440, 446, 37 A. 1057. If, however, upon hearing, the court is satisfied that the cause of action alleged in the complaint did not in fact exist, the plaintiff is not entitled to recover anything more than nominal damages. *Went* v. *Schmidt,* 117 Conn. 257, 259, 167 A. 721. The plaintiff assigns as error the court's conclusion that he is entitled to only nominal damages. That conclusion rests on the court's conclusion that the cause of action alleged in the plaintiff's complaint did not in fact exist.

The complaint against Morales was in two counts. The first count alleged that the poolroom was open to the public; that Cardona, Jr., was there as a patron, invitee, paying customer or business guest; that a fight ensued during which Morales stabbed Cardona, Jr.; that the stabbing occurred during the regular course of operation of the poolroom; that Cardona, Jr., died from the injuries he sustained; and that the plaintiff suffered certain damages as the result of the stabbing and death of Cardona, Jr.

The Valentin and Morales cases were consolidated

for the purpose of trial, and it was agreed that the evidence should apply to both cases where applicable. Accordingly, the court could consider the evidence relating to the two fights which was offered in connection with the Valentin case in determining whether a cause of action did in fact exist in the Morales case. Thus the court had before it evidence concerning the origin and nature of the fight in which Morales fatally stabbed Cardona, Jr..

On the basis of this evidence the court found that Morales, when he struck out with a knife, fatally stabbing Cardona, Jr., was surrounded by four or five antagonists who had invaded the poolroom and precipitated a fight; that one of these was Cardona, Jr.; that Morales was being attacked by this group; that Cardona, Jr., threw a bottle at him which hit him in the head; and that he was cut and bleeding as a result of being hit by the bottle. In view of the foregoing, it is clear that Cardona, Jr., and his friends precipitated the very situation which brought about his death. Since it is elementary that one cannot recover for a wrong brought about by his own acts, the court was fully justified in concluding that the cause of action which the plaintiff alleged did not in fact exist. Therefore, the plaintiff was not entitled to anything more than nominal damages. *Went* v. *Schmidt,* supra.

The second count of the complaint alleges that when the plaintiff, Cardona, Sr., went to the poolroom to investigate a report that his son had been stabbed, he was set upon and stabbed by Morales. In this regard the court found that Cardona, Sr., was the aggressor; that he went to the poolroom looking for trouble; and that it is conjectural and speculative as to who inflicted minor injuries to his person. Hence the court properly found that the cause of

action alleged did not in fact exist and that this plaintiff was not entitled to recover anything more than nominal damages.

The remaining assignments of error do not require discussion.

There is no error in either case.

In this opinion the other judges concurred.